OPINION
Defendant-appellant John E. Richard, Ph.D., appeals from a judgment rendered against him, in favor of plaintiff-appellee Creditrust Corporation, in the amount of $6,065.73. Richard argues that Creditrust failed to comply with Civ.R. 10(D) and otherwise failed to prove the necessary elements of its action on an account, because it failed to attach to its complaint or introduce into evidence a copy of an account that was properly itemized, with a beginning balance that constituted a "provable sum."
We conclude that the $6,065.73 figure on the final monthly statement sent to Richard constituted an "account stated," because Richard failed to object to its accuracy within a reasonable time. Therefore, the statement attached to Creditrust's complaint, which included the $6,065.73 figure, was sufficient to comply with Civ.R. 10(D). We further conclude that Creditrust established all of the material elements of an action on an account. Accordingly, the judgment of the trial court is Affirmed.
 I
Richard, a retired police captain, and his wife, Patricia, a retired grocery clerk, live at 2619 Garland Avenue in Springfield, Ohio. In 1987, Richard applied for and received a credit card from Chevy Chase Savings Bank. By January, 1993, there was a balance due on the account of $6,065.73. Because Richard had not made a payment on the account since August, 1992, the bank decided to write off the account as a loss to the bank due to nonpayment. The bank "charged off" Richard's account on January 29, 1993, meaning that it no longer reported the account as an asset.
Chevy Chase Savings Bank sold Richard's account to Creditrust Corporation, a debt collection agency, on August 5, 1996. Creditrust calculated interest on the account at 24%, the highest rate allowable under the terms of the credit card account, from the date of the charge-off, and added this amount to the account's unpaid balance of $6,065.73, arriving at a figure of $12,447.21. On August 12, 1996, Creditrust sent Richard a letter informing him that it had purchased his credit card account, and that it could "settle" the account for him. On August 28, 1996, Richard sent Creditrust a response, stating that it was not his credit card; that he had not owed Chevy Chase Savings Bank as much as Creditrust was claiming; that he wanted verification of the debt; and that he would not pay the bill.
On July 10, 1998, Creditrust filed a "Complaint for Money" in the Springfield Municipal Court, alleging that Richard owed it $12,447.21 plus interest. Creditrust attached to its complaint a "Customer Account Statement," which showed a "Beginning Book Value" of $6,065.73, and "Accrued Interest Charges" from the date of the charge-off to June, 1997, which raised the balance to $12,447.21. The matter was referred to a magistrate, who held a hearing on April 1, 1999. Counsel for Creditrust questioned Richard as follows:
 Q. So, just so I understand, it's your position is that you don't recall applying for a credit card account with Chevy Chase Bank. You don't recall ever receiving a credit card from Chevy Chase Bank. Is that correct?
 A. That's been over 12 years ago, or almost 12 years ago, sir. I just don't recall.
 Q. And you don't recall ever using an account with Chevy Chase Bank?
A. I don't recall.
Q. You recall ever making payments to Chevy Chase Bank?
A. I do not recall.
 Q. Do you recall ever sending a letter or disputing anything with regard to the use of a credit card account with Chevy Chase Bank?
A. Sir, I do not recall.
 Q. Are you in any position to dispute, uh, reported balance that Chevy Chase, or that Creditrust, the Plaintiff in this case, believes is due and owing? Do you have any records of any kind that would dispute the balance?
 A. No. I think that when, when, the first, the first time that this Mr. Block [an attorney for Creditrust] filed this [action], I called up there and I talked to him. And I said, I don't owe you people anything. I've never heard of Creditrust. And he was in someplace in Cleveland or something and I said, I'm not going to pay something that I don't even know what it's about.
 Q. I understand. Have you ever heard of Chevy Chase Bank?
A. Yes, I've heard of Chevy Chase Bank.
Q. And, but you don't know if you ever had an account?
A. No, sir.
Creditrust introduced into evidence copies of the monthly statements that Chevy Chase Savings Bank sent to Richard from January, 1992, to the date the account was charged off — January 29, 1993. Chevy Chase Savings Bank employee Jeanette Shives testified that the monthly statements prior to January, 1992, had been purged from the bank's record-keeping system because Richard had never disputed any of the charges on the account, nor otherwise complained about the account balance.
On October 6, 1999, the magistrate issued a decision finding that Richard had breached its contract with Chevy Chase Savings Bank, and, therefore, owed Creditrust, the bank's successor-in-interest, $6,065.73. However, the magistrate refused to award Creditrust the interest it had asserted was due, on the ground that Creditrust had breached the terms of the credit card account "by arbitrarily adding interest on the unpaid balance" of the account. Richard filed objections to the magistrate's decision, which the trial court overruled.
Richard appeals from the judgment against him in the amount of $6,065.73.
 II
Richard's sole assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND PLAINTIFF-APPELLEE'S ACCOUNT LACKED A "PROVABLE SUM" BALANCE AND THEREFORE WAS NOT PROPERLY ITEMIZED.
Richard argues that because Creditrust could not provide him with a copy of all of the monthly statements "detailing the alleged purchases which resulted in the alleged debt at issue[,]" it was unable: (1) to comply with Civ.R. 10(D), which required it to attach to its complaint a copy of the account, properly itemized and containing a balance that constitutes a "provable sum"; and (2) otherwise to establish the necessary elements of an action on an account. Therefore, Richard contends, the trial court erred by awarding judgment to Creditrust on the account.
Creditrust counters by arguing that it did not need to comply with Civ.R. 10(D), or to prove the elements of an action on an account, because its claim against Richard was an action on a breach of contract rather than an action on an account. Alternatively, Creditrust contends that the copy of the account it attached to its complaint and the evidence it presented at trial were sufficient to comply with Civ.R. 10(D) and to establish the essential elements of an action on account.
An action on an account is founded upon contract, Arthur v.Parenteau (1995), 102 Ohio App.3d 302, 304, and "is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid." Blanchester Lumber Supply,Inc. v. Coleman (1990), 69 Ohio App.3d 263, 265. The "cause of action does not exist with reference to each item of the account, but only as to the balance that may be due to one or the other parties[.]" Ludwig Hommel Co. v. Incorporated Village ofWoodsfield (1927), 115 Ohio St. 675, 681. The action "exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action." Am. Sec. Serv., Inc. v.Baumann (1972), 32 Ohio App.2d 237, 242.Civ.R. 10(D) provides, in relevant part, that "[w]hen any claim or defense is founded on an account * * *, a copy thereof must be attached to the pleading." In order to properly plead and prove an action on an account, a plaintiff must attach an account to his complaint containing the following:
 An account must show the name of the party charged. It begins with a balance[,] preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due. Brown v. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123, 126, cited in Gabriele v. Reagan (1988), 57 Ohio App.3d 84, 86-87.
Civ.R. 10(D) uses the word "account" in its narrow sense: "[a] detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relationship." Black's LawDictionary (6th Ed. 1990) 18. However, with respect to the phrase, "action on an account," the word "account" refers to the type of relationship between the parties and not to a particular book or record. Am. Sec. Serv., supra, at 245.
Initially, we reject Creditrust's assertion that it did not need to comply with the requirements of Civ.R. 10(D) nor prove the elements of an action on account because its claim was merely one for breach of contract. The relationship between Creditrust's predecessor in interest, Chevy Chase Savings Bank, and Richard was quintessentially one of account creditor and account debtor. The bank and Richard entered into an agreement whereby the bank would extend a line of credit to Richard, and he, in return, would repay the charges plus interest. The contractual relationship covered a series of transactions for which a balance would arise.
Furthermore, the purpose behind the requirement of Civ.R. 10(D) that a copy of the account be attached to the complaint is to allow the balance to be calculated in an accurate and reliable manner. If Creditrust's action against Richard was considered merely a breach of contract action and not an action on an account, Creditrust's measure of damages would, nevertheless, be the unpaid balance. Consequently, a party in Creditrust's position should not be permitted to evade the requirements of Civ.R. 10(D) by declaring that its claim is merely one for breach of contract, rather than on an account.
Creditrust argues, in the alternative, that it complied with Civ.R. 10(D) and otherwise established the necessary elements of an action on an account by introducing into evidence copies of Richard's monthly statements from January, 1992, to the date of the charge-off in January, 1993, and by attaching a copy of the "Customer Account Statement" to its complaint, which: (1) contains the name of the party charged with the debt (Richard); (2) has a beginning balance that can "qualify as an account stated," since it is a "provable sum established by the monthly statements introduced into evidence"; (3) "lists items representing charges, debits and credits"; and (4) "contains a summary which permits calculation of the balance claimed to be due and owing."
However, while the Customer Account Statement attached to Creditrust's complaint lists the accrued interest charges that Creditrust added to the beginning balance, which the trial court subsequently disallowed, it does not list any of the charges, debits, and credits comprising the $6,065.73 balance. Furthermore, the $6,065.73 balance cannot be considered an account stated on the basis that it is a "provable sum" established by the monthly statements entered into evidence because Creditrust was unable to produce all of the monthly statements showing the charges, debits, and credits that would permit the calculation of the balance claimed to be due. See Brown, supra.
These observations notwithstanding, we conclude that the $6,065.73 balance listed on the final monthly statement sent to Richard by Chevy Chase Savings Bank and on the Customer Account Statement attached to Creditrust's complaint does constitute an account stated and, therefore, qualifies as a provable sum. SeeId. We further conclude that the Customer Account Statement Creditrust attached to its complaint complied with the requirements of Civ.R. 10(D) and that Creditrust established the necessary elements of an action on an account.
The term "account stated" has been defined as:
 an agreed balance of accounts, expressed or implied, after admission of certain sums due or an adjustment of the accounts between the parties, striking a balance, and assent, express or implied. It has also been defined as an agreement between parties, express or implied, based upon an account balanced and rendered, and as an agreement between parties between whom there has been an account.
An account stated is predicated upon prior transactions which create a debtor-creditor relationship between the parties to the account. * * *. 1 Ohio Jurisprudence 3d (1998) 199-200, Accounts and Accounting, Section 24 (footnotes omitted).
An account stated exists:
 only where accounts have been examined and the balance admitted as the true balance between the parties, without having been paid. In other words, an account stated is based upon an assent to its correctness. This assent may be expressed or implied from the circumstances. Id. at 202, Section 26.
Of particular importance to the case before us is the fact that:
 [a]n account rendered by one person to another and not objected to by the latter within a reasonable time becomes an account stated. It becomes the duty of the one to whom the account is thus rendered to examine the same within a reasonable time and object if he or she disputes its correctness.
What constitutes a reasonable time within which objection must be made to an account rendered in order to preclude a presumption of assent and, thus, prevent it from becoming an account stated, depends on the particular factors of each case, such as the nature of the transaction, the relation of the parties, their distance from each other and the means of communication between them, the usual course of business between them, and their business capacity and intelligence. Id. at 204, Section 27. (Emphasis added.)
Generally, an account stated is not treated as absolutely conclusive, but only as prima facie correct; nevertheless, in the absence of a showing of fraud or mistake, an account stated is sufficient to permit recovery of the agreed upon amount. Id. at 205, Section 29. Stated another way, an account stated is only prima facie evidence of its correctness and may always be opened for mistake or fraud. Thus, the effect of an account stated is that the account will be taken as correct until shown by the party to whom it was rendered to be incorrect. Id. at 205-206.
Here, the final monthly statement that Chevy Chase Savings Bank sent to Richard showed an unpaid balance of $6,065.73. Under the terms of the credit card agreement, Richard was obligated to contact the bank no later than 60 days after the bank sent him the bill on which the error or problem first appeared. However, we need not consider whether 60 days constitutes a reasonable period of time for Richard to have raised an objection, because Richard never
raised any objections with the bank regarding any of the charges or balances listed on his monthly statements. Indeed, Richard did not object to the amount of the credit card balance until Creditrust sent him a notice informing him that it had purchased his account from Chevy Chase Savings Bank and demanding payment. Because Richard failed to object within a reasonable time to the account sent to him by the bank, showing an unpaid balance of $6,065.73, the account rendered became an account stated.
At the hearing held on this matter, Richard rested his case without presenting any witnesses or exhibits in his defense. He made no attempt to demonstrate fraud or mistake. Instead, Richard's defense throughout has rested entirely on the fact that Creditrust could not produce copies of the monthly statements prior to January, 1992. However, the fact that these statements are no longer available, standing alone, is insufficient to overcome the presumption that the account stated is correct. If Richard had wanted to show that the balance or any of the charges listed on the monthly statements were incorrect, he could have done so by using his own copies of the monthly statements, which the magistrate properly found had been sent to him according to Chevy Chase Savings Bank's usual business practices. The fact that Richard apparently did not retain any of his own copies of monthly statements showing improper charges or miscalculated balances creates an additional inference that the balances listed on the statements that were introduced into evidence were, indeed, correct. Alternatively, Richard was free to testify concerning his recollection of matters material to the account, and did so. Because Richard was unable to recall the very existence of the account, for which there was some evidence, the trial court understandably found that Richard's testimony was insufficient to rebut the presumption arising from the account stated.
In light of the foregoing, Richard's sole assignment of error is overruled.
 III
Richard's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 ___________________ FAIN, J.
WOLFF and YOUNG, JJ., concur.